Tagged Opinion



**ORDERED in the Southern District of Florida on March 13, 2008.**

                                                              **Paul G. Hyman, Chief Judge**
                                                            **United States Bankruptcy Court**

_____

```
              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF FLORIDA
                  WEST PALM BEACH DIVISION

In re:                              CASE NO.:98-31931-BKC-PGH

IRWIN SHERWIN,                      Chapter 7
     Debtor(s).
_____/

PATRICIA DZIKOWSKI,                 ADV. NO.:07-1017-BKC-PGH-A
     Plaintiff(s),

v.

KEVA SCHEIN, RHODA RUBIN
TORANTO, I.R. TORANTO, Trustee
of the Rhoda Rubin Toranto
Irrevocable Trust, OCEAN BANK,
a Florida Corporation, WALTER L.
LISTA, AND RED & BLUE
CONSTRUCTIONS, INC.,

     Defendant(s).
_____/
```

<u>**MEMORANDUM ORDER DENYING PLAINTIFF'S, PATRICIA DZIKOWSKI,
MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S,
I.R. TORANTO, AS TRUSTEE OF THE RHODA RUBIN TORANTO TRUST,
MOTION FOR SUMMARY JUDGMENT**</u>

    **THIS MATTER** came before the Court on December 19, 2007, upon

the District Court's *Order Vacating Bankruptcy Court's Judgment and Closing Case* (the "Remand Order"), in which the District Court remanded the case to this Court to determine whether the post-petition lapse of a judgement lien against the non-debtor co-owner's interest in entireties property rendered that judgment lien unenforceable.

## BACKGROUND

On January 16, 1976, Irwin Sherwin (the "Debtor") and his wife, Marcia Sherwin ("Ms. Sherwin," collectively with the Debtor "the Sherwins") acquired an interest in a parcel of real property (the "Real Property") as tenants by the entirety. In 1995, Rhoda Toranto ("Ms. Toranto") obtained a judgment in North Carolina State Court against the Sherwins and Boone Art Galleries, Inc. in the amount of $51,353.00 (the "Judgment"). On October 20, 1995, Ms. Toranto domesticated the Judgment in Florida by recording an exemplified copy of the Judgment and affidavit as required by Fla. Stat. § 55.505, thereby obtaining a judgment lien on the Real Property (the "Judgment Lien").

On April 13, 1998 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The parties do not dispute that the Judgment Lien was perfected as of the Petition Date. The case was subsequently converted on March 10, 1999, to one under Chapter 7 and Patricia Dzikowski (the "Trustee")

was appointed as the Chapter 7 Trustee. The Real Property was not listed on the Schedules and the Debtor did not claim any exemption in his interest in the Real Property. An Order Discharging the Debtor was entered on August 6, 1999, and the case was subsequently closed on May 13, 2003.

Ms. Toranto passed away and her interest in the Judgment Lien passed to I.R. Toranto, her son, as trustee of the Rhoda Rubin Toranto Irrevocable Trust (the "Toranto Trust"). On September 17, 2003, the Sherwins sold the Real Property. The Trustee was made aware of the sale and moved to reopen the case to avoid the transfer and administer the Real Property as property of the estate. The Trustee successfully avoided the sale of the Real Property and the court awarded the Trustee a one-half interest in the Real Property.

The Trustee commenced this adversary proceeding on January 12, 2007, seeking, among other things, a determination that the Judgment Lien is invalid, unenforceable, or avoidable under § 544(a). On March 15, 2007, the Toranto Trust re-recorded an exemplified copy of the Judgment and the affidavit required by Fla. Stat. § 55.505. The Trustee subsequently sold the Real Property to Diez Antilla, Inc., for $215,000.00. The Bankruptcy Court, by order of Judge Friedman, approved the sale on July 30, 2007, pursuant to § 363(h), with Ms. Sherwin's interest attaching to the proceeds from the sale. The Trustee's Interim Report, filed on January 28,

2008 in the main case, Case No. 98-31931, indicates that the Trustee currently holds the proceeds from the sale in a money market account with Mellon United National Bank.

## ANALYSIS

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (K).

### A. *The Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate if the Court determines that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). "In determining whether a genuine question of material fact exists, the Court must consider all evidence in the light most favorable to the

non-movant." *Pilkington v. United Airlines, Inc.*, 921 F. Supp. 740, 744 (M.D. Fla. 1996). In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S. Ct. 1570, 94 L. Ed. 2d 762 (1987) (citing *Anderson*, 477 U.S. at 248). "Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. . . . If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999).

**B.   *The Procedural History of This Case and the Arguments of the Parties.***

The Toronto Trust filed a Motion for Summary Judgment on February 20, 2007, and The Trustee filed a Motion for Summary Judgment on March 1, 2007. Each party filed a Response on April 2, 2007. The Toronto Trust argued that the Judgment Lien was valid and perfected on the Petition Date and that the Trustee cannot avoid a properly perfected lien that lapses post-petition. The Trustee argued that the Judgment Lien lapsed against the Debtor's interest in the Real Property on October 20, 2005, after the Petition Date,

and was unenforceable under Florida Law. The Trustee alternatively argued that even if the Judgment Lien had not lapsed against the Debtor's interest in the Real Property, it lapsed against Ms. Sherwin's interest because she was not a debtor and its enforcement was not stayed against her interest. Therefore, the Trustee argued, the Judgment Lien no longer constitutes a lien against the Real Property because it lapsed on October 20, 2005.

On July 23, 2007, Judge Friedman entered an *Order Granting Plaintiff's Motion for Summary Judgment and Denying Motions for Summary Judgment by Defendants Keva Schein, Rhoda Rubin Toranto, and I.R. Toranto, as Trustee of the Rhoda Rubin Toranto Irrevocable Trust* (the "Summary Judgment Order"). Judge Friedman found that the Judgment Lien had lapsed against the Debtor's interest in the Real Property and entered summary judgment in favor of the Trustee. The Toranto Trust appealed the decision to the District Court, which reversed and remanded the case to this Court. In the Remand Order, the District Court concluded that the validity of the Judgment Lien against the Debtor's interest in the Real Property was fixed as of the Petition Date. However, because Judge Friedman's Summary Judgment Order did not address the effect, if any, of the post-petition lapse of the Judgment Lien against Ms. Sherwin's interest in the Real Property, the District Court remanded the case to this Court to address the issue. Therefore, the remaining issue before this Court is whether the post-petition lapse of a judgement lien

against a non-debtor co-owner's interest in entireties property renders that judgment lien unenforceable. The unique facts of this case, which are not in dispute, present an issue of first impression for this Court.

### C.     *The Judgment Lien Is Valid And Enforceable Against The Real Property And Is Not Avoidable Under 11 U.S.C. § 544.*

The adversary complaint seeks a determination that the Judgment Lien is invalid or unenforceable, or alternatively, avoidable under § 544(a). Section 544(a) provides that, as of the commencement of the case, the Trustee has the rights and powers of:

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> ...
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a).

The Trustee argues that the Judgment Lien would be avoidable by either a hypothetical judicial lien creditor described in § 544(a)(1) or by a hypothetical bona fide purchaser described in § 544(a)(3) when the Judgment Lien lapsed post-petition on October 20, 2005. For the reasons stated below, the Court finds that the

Judgment Lien is valid and enforceable and is not avoidable under § 544(a).

Under Florida law, a creditor cannot reach property held as tenants by the entireties to satisfy the individual debt of one spouse. *In re McRae*, 308 B.R. 572, 575 (N.D. Fla. 2003) (*citing Havoco of America, Ltd. v. Hill*, 197 F.3d 1135, 1139 (11th Cir. 1999)). However, where both spouses are jointly obligated on the debt, the creditor may reach entireties property to satisfy the debt. *McRae*, 308 B.R. at 575. Therefore, if the Judgment Lien is valid and enforceable against both the Debtor and Ms. Sherwin, the Toronto Trust can reach the Real Property to satisfy the Judgment.

The Trustee argues that the Judgment Lien is invalid and unenforceable because it lapsed against Ms. Sherwin's interest on October 20, 2005. The Trustee argues that once the Judgment Lien lapsed against Ms. Sherwin's interest, it became unenforceable against the Real Property and lost any priority that it may have had on the Petition Date. The Trustee further argues that any new lien obtained by re-recording the judgment is avoidable under § 548(a) as a post-petition transfer of an interest in property of the estate.

The Toronto Trust argues that the post-petition lapse of the Judgment Lien is inconsequential because the Judgment Lien was perfected and the Toronto Trust was a joint creditor of the Debtor and Ms. Sherwin on the Petition Date. Additionally, the Toronto

Trust argues that, even if the Judgment Lien is evaluated as of today, it was re-recorded on March 15, 2007, such that it is currently enforceable against both the Debtor's and Ms. Sherwin's one-half interests in the Real Property.

The issue before the Court is the date on which the Court evaluates the validity and enforceability of a judgment lien on property of the estate held as tenants by the entirety. The Court has not found any authorities directly on point and neither party has cited any in the briefs. The Petition Date is generally used as a measuring point in bankruptcy to evaluate the status of claims, liens, and exempt property. *See, e.g., McRae*, 308 B.R. at 575 (citing § 522(b) and finding that the decisive moment for evaluating the entireties exemption is immediately before the commencement of the case); *Cmty. Bank v. Torcise (In re Torcise)*, 187 B.R. 18, 23 (S.D. Fla. 1995) (finding that "the amount by which a claim is oversecured must be determined as of the petition date"); *In re Elec. Mach. Enters.*, 371 B.R. 549, 551 (Bankr. M.D. Fla. 2007) (stating that "the time for determining the amount of a claim is as it existed as of the time of the filing of the case"); *In re Fodor*, 339 B.R. 519, 521 (Bankr. M.D. Fla. 2006) (finding that a claim of exemption is to be determined as of the petition date); *In re Rivera*, 5 B.R. 313, 315 (Bankr. M.D. Fla. 1980) (stating that "the right to claim exemptions by a debtor is governed by the facts and governing circumstances which existed on

the date the petition was filed and not by any changes which may have occurred thereafter"). *But see Official Comm. Of Unsecured Creditors of Toy King Distribs. v. Liberty Sav. Bank, FSB (In re Toy King Distribs.)*, 256 B.R. 1, 190 (adopting a "flexible approach" to determine the appropriate date to value collateral based upon the facts of this case).

In *McRae*, the debtor claimed certain property as exempt because it was held as tenants by the entirety with his non-debtor spouse. The chapter 7 trustee in that case objected to the claimed exemption on the basis that joint unsecured debts existed when the debtor filed bankruptcy. The debtor attempted to defeat the trustee's objection to exemption by arguing that the non-debtor spouse had paid off the joint obligation after the bankruptcy petition had been filed, and therefore no joint debt currently existed. The court rejected the debtor's argument and found that the post-petition payment to the joint creditor by the non-debtor spouse did not retroactively change the characterization of the entireties property. The court held that the operative time to evaluate the exemption was at the time of filing the petition, and that the debtor and his spouse were jointly obligated on the debt at that time. Although the Real Property was not claimed as exempt, the Debtor and Ms. Sherwin were both jointly obligated on the debt and the Judgment Lien was valid and perfected on the Petition Date. The subsequent expiration of the Judgment Lien during the

10

bankruptcy does not retroactively change the characterization of the Judgment Lien from perfected to unperfected on the Petition Date.

This Court finds that the Petition Date is also the operative time to determine the validity and enforceability of a judgment lien on entireties property. The purpose of the Trustee's strong-arm powers under 544(a)(1) is to protect general creditors of the estate from secret liens. *See In re Chaseley's Foods, Inc.*, 726 F.2d 303, 309-10 (7th Cir. 1984). Because the Judgment was properly recorded and the Judgment Lien was valid as of the Petition Date, it was not a secret lien. Although Ms. Sherwin is not a debtor, she was a co-owner of the Real Property on the Petition Date.

In this case, the Judgment represents a joint debt against the Debtor and Ms. Sherwin, and it was perfected on the Petition Date. Because the Judgment is a joint debt, under Florida law, the Toronto Trust could reach the Real Property as of the Petition Date. Therefore, the Court finds that the Judgment Lien is enforceable against the Real Property because it was perfected against both the Debtor and Ms. Sherwin on the Petition Date.

## **CONCLUSION**

The validity and enforceability of a judgment lien on property held as tenants by the entirety is evaluated as of the petition date. Because the Judgment Lien on the Real Property was valid

against both the Debtor and Ms. Sherwin on the Petition Date, it is enforceable.

### ORDER

The Court having considered the submissions of the parties and being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** that:

1) The Plaintiff's Motion for Summary Judgment is **DENIED** to the extent that it seeks a determination that the Judgment Lien is invalid, unenforceable, or avoidable.

2) The Toranto Trust's Motion for Summary Judgment is **GRANTED**.

3) The Judgment and Judgment Lien are valid and enforceable against the proceeds from the sale of the Real Property by the Trustee pursuant to the July 30, 2007 Order approving the sale.

4) The Trustee shall turnover to the Toranto Trust the proceeds from the sale of the Real Property, including any interest earned thereon, within ten days from the date of this Order.

5) Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate final judgment shall be entered by the Court contemporaneously herewith.

###

Copies Furnished To:

Julie Elizabeth Hough, Esq.

Patrick S Scott, Esq.

Bradley S. Shraiberg, Esq.

Eyal Berger, Esq.

John E. Page, Esq.

AUST